ROBERT BIRD, Appellant, *v.* THE LONG ISLAND RAILROAD COMPANY, Respondent.

*Negligence — acts of a brakeman in walking on planking at a station thirty feet to stationary cars, in front of an approaching train, to couple it to them — liability for defects in the planking.*

In an action to recover damages for personal injuries caused by the alleged negligence of the defendant, a railroad corporation, it appeared that the plaintiff, who was a brakeman in the defendant's employ, stepped upon the track in front of the platform at one of defendant's stations, at a point from thirty to forty-five feet from certain stationary cars, in order to couple them to other cars which were slowly moving down towards them. In front of the station a plank walk had been laid for the convenience of persons rightfully upon the defendant's premises, and in the planking between the rails there was a rotten board, the edge of which was split and broken, and sprang up and down when stepped upon, and upon the plaintiff's stepping upon this board his foot slipped into a space four or five inches wide between the plank and the rail, and he, being unable to release himself, was run over by the slow moving cars in his rear. It appeared that, although there was a space of two feet between the platform and the nearest rail of the track upon which the plaintiff stepped, this space was not sufficient to walk in, when a train was in motion.

Upon the trial the complaint was dismissed.

*Held,* that the planking was dangerous and in the nature of a trap, and that it subjected the defendant to the imputation of negligence;

That the plaintiff had the right to assume that the walk was safe, and that he was not required to use extraordinary care in looking for holes in it;

That the question of whether the plaintiff was guilty of contributory negligence in going upon the track at such a distance from the stationary cars was one for the jury to decide.

APPEAL by the plaintiff, Robert Bird, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of Queens on the 4th day of May, 1896, upon the dismissal of the complaint directed by the court after a trial before the court and a jury at a Trial Term of the Supreme Court held in and for the county of Queens.

The action was brought to recover damages for personal injuries caused by the alleged negligence of the defendant.

*John Fleming,* for the appellant.

*William J. Kelly,* for the respondent.

HATCH, J. :

The plaintiff was a brakeman upon defendant's railroad, and while engaged in the performance of his duties his foot was caught in a portion of a planked space between the rails of the track, and before he could extricate himself he was run over by a moving car and suffered severe injuries, resulting in the amputation of the left leg and an injury to the right. At the close of the plaintiff's proof defendant moved for a dismissal of the complaint upon these grounds : "*First,* that the plaintiff has failed to show any negligence on the part of the defendant; *second,* that the plaintiff has failed to show absence of contributory negligence on his own part ; *third,* that the proof shows affirmatively that the plaintiff was guilty of contributory negligence." The motion was granted upon each of these grounds, and plaintiff duly excepted thereto. This disposition of the case imposes upon this court a careful examination of the evidence given upon the trial. The train upon which plaintiff was employed was a freight train. Arriving at Bay Shore, a station upon defendant's road, it stopped for the purpose of placing some of the cars composing the train upon a side track. The cars were uncoupled, the engine drew them away and placed those intended to be left, upon the side track. The remainder of the train was left stationary upon the main track. The end car of the rear portion of the train, upon which the plaintiff had set the brake, was at the westerly end of the planking between the rails. The train, when it first came to a standstill, was directly opposite the platform and station at Bay Shore. That part of the train which the engine hauled away ran to the east 200 or 300 feet before it reached a point to switch upon the siding. All of the cars which were hauled away were not left upon the siding, nor does it appear whether the rear cars of those hauled away or others, in that portion of the train, were left. Who uncoupled the cars is not shown, and whether the same which had been uncoupled, or another car came back to be coupled to the standing cars does not appear. All that appears is that certain cars composing the train were hauled away and that some cars were brought back to be recoupled to the standing train. The north rail of the track, which is the one nearest the station, is about two feet from the platform, and there is not room between the platform and the rail

for a person to walk when a train is in motion. In front of the platform and between the rails the space is planked and furnishes a walk for passengers to reach the cars or depart therefrom at this station and for others having occasion to use the same. Plaintiff's evidence tended to establish that at a point about four or five feet from the westerly end of this planking there was a spot where the plank was split and rotten, and where there were some old pieces of board. The edge of the plank was broken and split, and sprung up and down when stepped upon. There was also a space four or five inches wide into which the foot could slip, as the accident established, and subsequent experiment demonstrated.

While the cars were being placed upon the siding plaintiff remained at the station to recouple the cars when they should return, and for this purpose had provided himself with a link and pin. Upon their return the engineer was subject to control by the signal given by the plaintiff. Plaintiff testified that he gave the signal to the engineer to back up, and that the train moved slowly down towards the standing cars; that he stepped off the platform to make the coupling, took a step or two, when his foot was caught between the plank and the rail, at the defective spot. He was unable to release it and threw himself upon the platform, and his leg was run over. It is at this point of the case that a serious controversy arises, not alone as to what is the effect of the evidence, but as to what is the evidence. Defendant's contention is that " on the plaintiff's own story, he was walking up to meet the moving train, signaling the engineer to back, and when he was 30 feet from the stationary part of the train he stepped in before a moving train coming towards him by his own direction, his intent being to catch in his hand a link on the front end of the moving train and lead it to the stationary cars." The evidence tended to establish that the first stationary car was near the west end of the planking, overlapping it a little. Plaintiff states that, when he gave the signal to the engineer to back down, he stood a couple of car lengths from the moving cars and about a car length from the standing cars, and that he was then getting ready to couple the cars. When he was caught he says that the moving cars were about a car length away, and the stationary cars not quite a car length. Richard Hubbard states that he was about eight feet away; that he saw plaintiff step between the rails when the moving cars were about half a car length

away, and very quickly after heard his outcry ; that he turned, and that plaintiff was then about four feet from where he stepped over the rail.   He was then caught, and this place the witness says was four or five feet from the west end of the planking.   And the evidence is that the first stationary car stood just over the west end.   Being recalled and pressed to state the distance the moving and standing cars were apart when the plaintiff was caught, he first stated about eight feet, and, being further pressed, reduced the distance to about four feet.   Henry Wood testified that when he first saw the plaintiff he was getting ready to couple the cars, which were then about twenty-five or thirty feet apart ; that he moved down with the moving cars, and that when the cars were about eight to ten feet apart he was caught.   William Brackston states that when plaintiff stepped over the rail the moving cars were not more than two feet and a half from him, and that the space between the moving and standing cars was just about sufficient to enable him to get between them and make the coupling.

It is quite impossible to reconcile this testimony as to the distance the cars were apart when plaintiff stepped over the rail, or to determine just how far the cars were apart when he was caught.   In one view of the testimony the cars were ninety feet apart when he stepped over the rail ; in another view there was only space sufficient for him to make the coupling.   If this became a controlling question in the case, who was to determine it, the court or the jury?   It is quite evident that none of the witnesses spoke from any actual measurements which they had made.   All statements as to distance were matters of opinion, based upon opportunity and capacity for observation, judgment in measurement and accuracy of recollection. The whole was to be measured upon these considerations, in connection with the candor and integrity of statement of the witness, to judge of which in all its features was the province of the jury.   If the act of going between the cars while they were farther apart than was necessary to make the coupling was an act of negligence, then it was for the jury to say, upon all this testimony, whether such act had been committed.

The statement of plaintiff in this regard is not conclusive or controlling, in view of the other evidence in the case.   He did not pre-

tend to give the distance accurately, and his evidence was to be received and considered in connection with the place where he was actually caught, his own statement of the distance and the statements of the distance by the other witnesses in the case.

The manner in which the coupling was attempted to be made is also challenged, and it is claimed that in going in front of the moving cars, before reaching the spot where the coupling was to be actually made, was an affirmative act of negligence. As we have seen, it is by no means clear that he did go between the cars before it was necessary, and we think this question could only be solved by the jury upon the evidence. The plaintiff makes statements as to what he did in this connection which are not entirely harmonious. He states that he stepped down from the platform to make the coupling, took one or two steps and was caught. He had in his hand a link and pin to use if necessary, but when the car returned it had a link and pin in the drawhead. Plaintiff states: " I never touched the link, because, when I went in to make this coupling I got fast." He says his intention was to take hold of the link, and this would necessarily follow if he coupled the cars with his hands. The court asked him if he was walking towards the moving car when his foot was caught and he answered, " No, sir." Immediately following this he was asked by the defendant's counsel, on cross-examination : " Were you going up to meet the cars that were coming down ? A. Yes, sir." The cross-examination was continued and plaintiff was asked : " Q. See if this is right : you stepped off the platform ; then on the rail and walked towards the stationary car not quite a car length away from you while the moving part of the train was coming down ? A. Yes, sir. Q. That is right ? A. Yes, sir. Q. And you walked with the moving part of the train coming behind you. Do you tell the jury that one of your feet was in between the rails and the other outside, or were you walking between the two rails ? A. I was not walking at all. I just stepped in when I got catched." It thus appears that his first and last statement were in substantial accord and it was for the jury to say what effect was to be given to his testimony.

The only other witness who speaks upon this subject was the witness Wood, and after much examination and illustration he states : " Q. When he was walking down and the car follow-

ing, you indicated that he had hold of something, was that the coupling? A. Yes, sir; he was getting the coupling ready to couple. Q. In the car? A. In the car that stood waiting for to couple on. Q. He was going down with the cars? A. The train was coming down, and he was coming down with the train; when I first saw him the cars were as far apart * * * I suppose about twenty-five or thirty feet, about thirty feet I should judge. The Court: When this witness illustrated as holding something, I understood him to illustrate the boy as holding the coupling in his own hand, not holding anything on the car. Mr. Kelly: But he stated that he was following the car. The witness: He was fixing the link. By the Court: In his own hand? A. In his own hands; the coupling was — with a bolt in, but he was fixing that and had the iron. By Mr. Kelly: When you told the jury that he was following the car, or the car was following him, do you mean the car that was moving down? A. I meant the car that was following him down to the coupling." We are not able to see that this witness speaks of the coupling upon the car; he may have referred to the link and pin in his hand. It seems quite clear that the jury would have the right, upon this testimony, to reject the claim that plaintiff walked to the coupling upon the moving car and was engaged in fixing it, and walking down with the moving train. Plaintiff denies it, and the last witness, as we have seen, does not so say. If when he got down from the platform he stepped over the rail and there continued walking down to the stationary car, assuming he then had thirty to forty-five feet to walk, which would be the extreme distance, whether or not he was chargeable with negligence, presented a question of fact for the jury.

We have seen that this place was planked over. It was constructed for the purpose of a walk for people rightfully thereon. Plaintiff had the right to assume that it was safe for that purpose, and he was not required to exercise extraordinary care to look out for holes therein. It was a place where they would not be expected. If he was chargeable with the duty of looking for defects in the walk, it is quite clear that this hole into which his foot slipped might not have been apparent to ordinary inspection. The duty rested upon the defendant to keep the place reasonably safe; it could not maintain a dangerous place as this was shown to

be, clearly in the nature of a trap, without being subject to the imputation of negligence. (*Fredenburg* v. *N. C. R. Co.*, 114 N. Y. 582.)

The platform was two feet from the first rail, a narrow space to walk in, and if plaintiff stepped over the rail and started to walk down to the stationary cars with these slow-moving cars in the rear, under the conditions by which he was surrounded, we do not think that the court can say, as matter of law, that such act was negligent. But upon the evidence here, as we have seen, whether he did so or not was a controverted question. Upon the whole case we think the questions were for the jury.

Defendant relies upon the case of *Finnell* v. *D., L. & W. R. R. Co.* (129 N. Y. 669). There the brakeman left a slow-moving engine and went to a car in front to remove a link in the car to which he was to attach the engine. The place over which the brakeman passed was a rough unballasted track, with which he was entirely familiar and which was plainly visible; his foot was caught between the ties in the track and the engine ran over him. The court held him guilty of contributory negligence. We are confronted with no such case upon the present record. Here the place over which the plaintiff was to pass he had the right to assume was safe. The defect was not visible to ordinary inspection. While he had been at the place before, it could not be said that he was familiar with the surroundings. In the case cited the danger was open and understood. In the present case the danger was hidden and unknown. The difference is radical.

The judgment should be reversed and a new trial granted, with costs to abide the event.

All concurred.

Judgment reversed and new trial granted, costs to abide the event.