(20 App. Div. 605.)

COXHEAD v. JOHNSON et al.

(Supreme Court, Appellate Division, Second Department. October 5, 1897.)

1. STREET RAILROADS—STRINGING CABLES—NEGLIGENCE.

Plaintiff, in crossing a city avenue between two cross streets, was thrown down and injured by a rope used by defendants in stringing a cable on the girders of an elevated railroad structure. One end of the rope was attached to the cable, and to the other was hitched a span of horses. The

rope, some 500 feet long, was thus drawn along the middle of the avenue. The method adopted was the usual one. To avoid danger to travelers, defendants had placed men at intervals of about 150 feet apart. One of them, some 100 feet from plaintiff, motioned to her to go back; but on this point she was not examined, but she testified that she heard no warning. The men testified that there was danger. *Held,* that the evidence permitted the conclusion that defendants had not adopted adequate means for warning travelers of the danger.

2. SAME—CONTRIBUTORY NEGLIGENCE OF TRAVELER.
    The question whether plaintiff was guilty of contributory negligence was for the jury.

3. SAME—DAMAGES—EXCESSIVE VERDICT.
    . Plaintiff was 52 years of age at the time of the trial. The injury was the fracture of a thigh bone. She was in the hospital for four months, and it was nearly another month before she was able to move about on a crutch. She had suffered severely. The effects of the injury were permanent, and it appeared that her condition might continue to greatly impair her ability to perform her regular work. She had been a dressmaker, earning two dollars a day and board when at work. She had a husband, with whom she had not lived for about a year before the accident. After she ceased to live with him, she had supported herself. She recovered a verdict for $15,000. *Held* excessive.

Appeal from trial term, Kings county.

Action by Ellen J. Coxhead against Albert L. Johnson and James M. Edwards. From a judgment entered on a verdict in favor of plaintiff, and from an order denying a new trial, defendants appeal. Affirmed on condition of remittitur.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT. HATCH, and BRADLEY, JJ.

Henry Yonge, for appellants.
Thomas E. Pearsall, for respondent.

BRADLEY, J.   The plaintiff, on the morning of July 5, 1894, in proceeding to cross Fifth avenue, in the city of Brooklyn, stepped upon a rope which was moving along that avenue, and fell.   The consequence to her was a serious injury, which she charges was occasioned solely by the negligence of the defendants.   Above and on the line of the avenue was an elevated railroad, and on the surface of the avenue was a double-track trolley railroad.   At the time in question the defendants were engaged in stringing an electric cable on the girders of the elevated railroad structure, and for that purpose they used a rope, one end of which was attached to the electric cable, and at the other end was hitched a span of horses. By this means the rope was drawn along the street, and the electric cable strung along on the girders above.   There was evidence tending to prove that the length of the rope was 500 feet or more, that it extended from south of First street northerly to beyond Carroll street, and that 200 feet or more of it was dragged along on the surface of the avenue, between the rails of the westerly track of the trolley road.   The plaintiff came out of Garfield Place, a cross street, on the easterly side of the avenue, and, after going northerly on that side to about the middle of the block, proceeded to cross the avenue diagonally in a northwesterly direction, to a drug store on the southwesterly corner of the avenue and Carroll street, which

was the street next northerly from Garfield Place; and on reaching the place in the avenue where the rope was moving along she evidently stepped upon it, and was thrown down. Her description of the occurrence after she left the easterly side of the avenue is: "I stepped off to make my way over the street, and when I got about halfway something caught me around the feet, and raised me up, and I fell,—threw me down on my side. I did not see any rope." She afterwards stated that something got her about the feet, that she did not mean to be understood that it went around her limbs, and that it was done so quickly that she had no time to know how it was done. There is not much controversy about the facts. The contest related more to the inference deducible from them than to the situation and occurrences. The method adopted by the defendants in stringing the electric cable along the structure of the elevated railroad was the usual one, although the occasion to do that did not frequently. occur. There seems, by the evidence, to have been some recognized danger to travel on the street occasioned by the use so made of it by the defendants. And to avoid injurious consequences to those traveling there, a person (Lawson) stood near the center of the avenue on the line of Garfield Place, and another man (Ahlers) was on the east side of the avenue a short distance south of Carroll street, and the foreman (Valot) of the work was near the place on the avenue where the rope commenced slanting from its elevated attachment to the ground. Those persons were from 150 to 160 feet or more apart. One of the purposes of their being there was to give and transmit signals to the driver of the horses to stop and start up the team as desired. The horses were moving slowly at the time of the accident. If the dragging of the rope along the street rendered the travel upon it dangerous, the duty rested upon the defendants to use reasonable care to warn people on the street of the danger, and thus enable them to avoid it. Lawson testified that he saw the plaintiff when she started and proceeded to cross the avenue, and motioned to her to go back. "Q. What was she to look out for? A. For the danger. Q. What danger? A. The rope. Q. What rope? A. The running line. Q. You thought there was great danger that if she walked there she might step on it, and get hurt? A. It was my place to tell the lady, sure." He added that he thought he was not over 100 feet away from her. The testimony of Ahlers is that he saw the plaintiff as she started and proceeded to cross the street; that he saw Lawson·beckon with his hand to her to stop; but that he could not hear him say anything. The foreman, Valot, testified that he saw the plaintiff when she had got near to the rope, and that he saw Lawson motion to her to go back. He also testified: "This rope was moving along in the street, and it was dangerous, and people might fall; and we kept men at Garfield Place to warn people not to go over that rope, and to warn teams not to cross over it." The fact that there was some danger to travel occasioned by the use which the defendants made of the street was illustrated by the accident in question. And, although this work so done by the defendants in the street was in itself lawful, they assumed the duty of

exercising due care for the protection of others against the hazards
incident to such use so made by them of the street.    This could
be done either by having adequate means of warning persons upon
the street against the danger, or by stopping the movement of the
horses drawing the rope whenever persons in any manner were
proceeding to cross the street.    The former method would be the
more practicable, and it could, without much difficulty, be so organ-
ized as to be effectual.    Was it reasonably sufficient in this in-
stance?    The plaintiff testified that she heard no warning given
to her; and, although she does not appear to have been asked
whether or not she saw any beckoning motion made to her, nor to
have testified that she did not, it cannot be here assumed that she
saw or understood any such beckoning motion as made to her.
She says that she looked both ways, as she proceeded to cross, to
see if any cars were approaching on the trolley road.    The avenue
in that locality seems then to have been a business street.    It is
reasonable to suppose, as indicated by the evidence, that there was
some noise in that vicinity; and none of the witnesses seem able
to state whether or not the cars were then passing there on the
elevated railroad.    If the plaintiff had crossed the avenue on the
line of Garfield Place on which she came to it, instead of going
northerly to the middle of the block to cross it, it is very likely that
her proximity to the place where Lawson was would have been such
as to enable him to give and her to receive warning to avoid the
danger.    But she had the right to cross the street where she under-
took to do so.    And where streets are paved, and in reasonably
good condition for crossing, it cannot be assumed that people will
not cross elsewhere than at what are known as street crossings.
The contrary of such assumption has the support of daily observa-
tion.    It is nevertheless true that less reason may exist to expect
persons going elsewhere across streets than at the street crossings.
This suggestion is peculiarly applicable to the operation of street-
surface railroads, in which there is no recognized legal excuse for
not having the cars under control when they approach street cross-
ings.    Fenton v. Railroad Co., 126 N. Y. 625, 26 N. E. 967.    There
is no well-defined rule of measure for what is termed due or rea-
sonable care.    What is such depends upon circumstances having
reference to the hazards and consequences which may be encoun-
tered or apprehended.    The question is a mixed one of law and
fact.    And the degree of care required in any given case is such as
a man of ordinary capacity and prudence might, in view of the cir-.
cumstances, be expected to exercise.    Unger v. Railroad Co., 51
N. Y. 497.    In the present case the men employed in the work had
recognized signals for stopping the movement of the horses.    This
was effectually given immediately after the plaintiff fell.    If they
had apprehended the consequences of the omission to do so, they
probably would, as they could, have stopped the team immediately
before the accident, to enable the plaintiff to proceed with safety.
In view of the conditions as they existed about there, the conclu-
sion was permitted, from the evidence, that the location of the men
at the cross streets, 200 feet apart, did not constitute adequate

means for warning persons who might reasonably be expected to go upon or across the avenue in that locality during the progress of the work there. And in the view taken of the evidence the question whether or not the defendants, in thus making use of the street, did all that was reasonably required of them for the protection of persons traveling or passing back and forth upon and over it was one of fact for the consideration of the jury.

The further question on the main issues is whether the plaintiff established by evidence her freedom from contributory negligence. She was also required to use reasonable care for her own protection, —such care as persons may be expected to exercise under like circumstances. She was advised of the surface railroad, and she looked both ways to see that she would encounter no danger from approaching cars. That place in the street then appeared to her to be a safe place to cross. She says that she did not see the team of horses, which was considerable distance northerly from her, drawing the rope. Nothing in the condition of the surface of the street appeared to her to require any particular attention in passing, and she apprehended no interrupting or disturbing cause to require unusual care and precaution in her progress over the street. The rope, an inch or an inch and a quarter in diameter, was moving noiselessly; and the evidence tends to prove that it had the color of the dust and dirt on the surface of the street. As to its particular location, some of the witnesses testified that it was between the rails of the southbound track, and others testified that it was in what was called the groove of the rail. It may be inferred that if it was in the latter place the rope was less prominently visible than it otherwise would have been, although it could easily be seen there without difficulty by a person whose attention was called to it. The right of the plaintiff to cross the street where she sought to do so was no different, and she was entitled to no less protection, than at a street crossing. Moebus v. Herrmann, 108 N. Y. 349, 15 N. E. 415; McClain v. Railroad Co., 116 N. Y. 459, 22 N. E. 1062; Thompson v. Railway Co., 145 N. Y. 196, 39 N. E. 709. And, so far as related to the street itself, she was not required to exercise the same degree of vigilance that would be required of a person walking elsewhere than in a public street. She had the right to assume that the street was in reasonably safe condition for passage, except so far as she saw, or her attention was called to, something to the contrary. Yet she was not at liberty to shut her eyes to the situation about her. Bird v. Railroad Co., 11 App. Div. 134, 42 N. Y. Supp. 888; Jennings v. Van Schaick, 108 N. Y. 530, 15 N. E. 424; Pettengill v. City of Yonkers, 116 N. Y. 558, 22 N. E. 1095. In crossing the street, which had the appearance of safety, the plaintiff was not required, on her way, to search for hazards, and the conclusion was warranted that neither the nature, movement, nor location of the rope was such that in crossing the street in the manner in which a reasonably discreet and prudent person usually crosses would necessarily have attracted the attention or had the observation of such person in approaching it. The question whether any negligence of the plaintiff contributed to her injury was one of fact for the jury. Our attention is called to

Strutt v. Railroad Co., 18 App. Div. 134, 45 N. Y. Supp. 728, in support of the charge of plaintiff's contributory negligence. The injury there was caused by the plaintiff's intestate being tripped by a hose lying on the defendant's wharf. It was plainly visible. The view of the court in that case was that, as there was a hydrant on the wharf, and as on wharves and docks are often to be found articles temporarily deposited there, it was incumbent upon him to look, and see whatever may have been temporarily left on the wharf in the line of his progress upon it. And Mr. Justice Cullen, in delivering the opinion of the court, added: "As he [the traveler] goes along the highway, he must anticipate the possibility of hydrants, of telegraph and electric light poles, hitching posts, and carriage blocks, and also the fact that the use of the street may be temporarily encroached upon lawfully by an adjacent owner, either in the receipt of goods or in the improvement of his property." The things thus referred to by way of illustration are those only which are near the outer margins or on the sides of streets, and frequently seen there. Those the traveler may be supposed to observe in the daytime, and they, in that respect, are clearly distinguishable from the condition produced by a rope lying in the middle of the street, or in the groove of the rail of a surface railroad, and moving by the application of power which the traveler has not observed. The Strutt Case, in the view taken of it, does not seem to have any necessary application to the present one.

The verdict for $15,000 is attacked as excessive. I am inclined to think that there is much force in the contention of the learned counsel for the defendants in that respect. The plaintiff was 52 years of age at the time of the trial, in March, 1897. The injury she received was the fracture of the upper extremity of her left thigh bone, just outside the hip joint, commonly called a broken hip. She was in bed at the hospital for about four months, and it was nearly another month before she was able to move about on a crutch. Her injury was serious, and in its effects will be permanent. She has suffered much pain, to which she is still to some extent subjected when she makes use of her limb. Her business, up to the time of her injury, was making and fitting dresses, which work she performed at the homes of others, and received two dollars per day and her board while thus engaged. She usually stayed at her own home nights. Her condition, produced by the injury, does and may continue to greatly impair her ability to perform such work, although not to disable her entirely in that respect. The plaintiff has a husband, with whom she had not lived for about a year before the accident. Until she ceased to live with him, she did not go out dressmaking. Since then she has supported herself. She is not separated from him by any decree. It is not assumed that they will live together again, or that the husband will contribute to the plaintiff's support. She is entitled to only compensatory damages. Notwithstanding that the question of damages fairly, with proper instructions, was submitted to the jury, the verdict is deemed excessive in amount; and, in the view taken of it, the judgment and order should be reversed, unless the plaintiff stipulates to reduce the recovery of damages to $10,000, and in that event the judgment should be so modified, and,

as modified, affirmed. All concur, except GOODRICH, P. J., who concurs in the result, except as to the amount of recovery, which should be reduced to $7,500.