YOUNG v. HERRMANN et al.

(Supreme Court, Appellate Division, Second Department. May 3, 1907.)

1. MUNICIPAL CORPORATIONS—STREETS—USE FOR TRAVEL—OBSTRUCTION.

A rope extended between two wagons, so that the forward might assist in drawing the rear wagon, is none the less an obstruction because shifted by the progress of the wagons along the street.

2. SAME.

The fact that it was necessary, in order to move a wagon, to connect it by a rope with another wagon, so that the forward wagon might assist in drawing it, would not free the persons using the rope from the imputation of negligence.

3. SAME.

Where a rope was extended between two wagons, so that the forward might assist in drawing the rear wagon, the persons using the rope were bound to observe due care to warn other users of the street of the obstruction.

4. SAME—USE OF CROSSING.

As between a driver of a wagon approaching a crosswalk and a pedestrian using the same, there is no superior right of way; but each must observe due care for his own safety and for the safety of the other.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 36, Municipal Corporations, § 1515.]

5. SAME—EVIDENCE—SUFFICIENCY.

In an action for injuries sustained by a person using a crosswalk in being thrown by running against a rope extended between two wagons, *held*, under the evidence, that defendants' driver was bound to foresee that a pedestrian might attempt passage between the wagons.

6. SAME—QUESTION FOR JURY.

In an action for injuries sustained by a person using a crosswalk in being thrown by running against a rope extended between two wagons, *held*, whether defendants exercised due care in warning him of the obstruction was for the jury.

7. SAME.

In an action for injuries sustained by a person using a crosswalk in being thrown by running against a rope extended between two wagons, *held*, whether plaintiff exercised due care was for the jury.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 36, Municipal Corporations, §§ 1515, 1518.]

Gaynor, J., dissenting.

Appeal from Trial Term, Kings County.

Action by Robert Young against Henry Herrmann and others. From a judgment for plaintiff, and an order denying a new trial, defendants appeal. Affirmed.

Argued before WOODWARD, JENKS, RICH, and GAYNOR, JJ.

John C. Robinson, for appellants.

Julius H. Cohn, for respondent.

JENKS, J. The action is for negligence. The plaintiff attempted to cross Third avenue at Twenty-Third street, in the borough of Manhattan, from west to east, upon the south crosswalk, between two moving wagons of the defendants. As travel in the street was impeded by snow therein, defendants' second wagon was being helped along by a rope attached from the first wagon. The plaintiff came against the rope, was thrown to the ground, and was injured. He recovered a verdict for $3,500, and the defendants appeal.

Third avenue is a thoroughfare of a large city much traveled, and at the time and place of the accident many travelers were therein. Travelers constantly cross these city streets between moving vehicles, and almost necessarily in thoroughfares at busy hours. When the defendants' driver extended this rope between the moving vehicles, he obstructed a space which ordinarily is clear, and is measured as a possible passage by the traveler with an eye only to the extent of the space. The fact of obstruction was not affected by the circumstance that the obstruction was shifted by the progress of the wagons along the street (Davis v. Mayor, etc., of New York, 14 N. Y. 506–524, 67 Am. Dec. 186); for the obstruction existed in the street as to any point where a traveler sought to pass between the wagons. The fact that this device was necessary to move the second wagon would not free the defendants from imputation of negligence. If as a conse-

quence of such device they obstructed the street, they were bound to observe due care to apprise or to warn other users of the street of the obstruction.

As between the defendants and the plaintiff, there was no superior right of way. Each must observe due care for his own safety and for the safety of the other. Barker v. Savage, 45 N. Y. 191, 6 Am. Rep. 66; Brooks v. Schwerin, 54 N. Y. 343. The defendants' driver, as he approached this crosswalk, was bound to foresee that a footman might be there intending to cross over. Moebus v. Herrmann, 108 N. Y. 349, 15 N. E. 415, 2 Am. St. Rep. 440. There was a horse harnessed to the second wagon and a driver in it, so that it would appear as a separate and complete outfit. I think that, under such conditions, the circumstances of time and place, and in view of the testimony for the plaintiff that the space was 12 or 15 feet, the defendants might be held to foresight that a footman might attempt passage between these wagons. Their negligence, then, depended upon the question whether they had exercised due care in apprising or in warning the plaintiff of this obstruction of such space, and that question was for the jury. Coxhead v. Johnson, 20 App. Div. 605, 47 N. Y. Supp. 389, affirmed 162 N. Y. 640, 57 N. E. 1107.

The learned counsel for the appellants asks: "Wherein were the defendants negligent?" I do not think that under the circumstances it can be said as matter of law that the obstruction itself was sufficient warning. The jury did not need to go so far as the learned counsel for the respondent suggests as to find negligence in the absence of some telltale upon the rope like fluttering rags, or hanging light, or the employment of some one to walk beside the wagons to give warning. Upon the record the jury may have concluded that liability should be cast upon the defendants for the omission of their second driver to warn the plaintiff; for that driver testifies that he saw the plaintiff about to cross in the space. He does testify that he cried out to the plaintiff, but in vain. But the plaintiff testifies that he "heard nobody" before he fell; that he heard noises, but that he did not know what it was; but that he only heard "yelling" or "shouting" when he was knocked down. Officer Neville, who saw the entire occurrence, testifies that he first heard shouting as soon as the plaintiff commenced to struggle, but that "the drivers of the wagons made no outcry."

The plaintiff had the right to suppose that there was no obstruction, by rope or other like attachment, of the clear space between the two wagons thus equipped, save so far as he observed it, or his attention was directed to it. Coxhead v. Johnson, supra. The accident happened at 6:45 p. m. on January 16, 1904. The plaintiff testifies that it was "pretty dark," and that the space between the wagons was about 12 or 15 feet; that he waited for the front wagon to pass; that he did not see the rope; that it was light enough for him to see the rope if he had looked for it, if he had known it was there, but of that he was ignorant; and that he thought he had plenty of room to pass. Officer Wundis testifies that he first noticed the rope when they lifted up the plaintiff; that at that hour it was "a little bit dark," "not extra bright," "a kind of winter evening." Officer Neville testifies that after

the accident he then found the rope attached, but that it was impossible to distinguish it. Brueckner, an eyewitness who was on the southeast corner of these streets, testifies that when the wagon passed him within six or seven feet he happened to look down, and he happened to see the rope; but, if he had come across from the other side, he would not have seen the rope because of the darkness. While there is evidence that there were lights from the public lamps and from the shops, there is also evidence that natural and artificial light was obscured by a station of the elevated railway. In view of the fact that the accident happened at this hour of a winter's evening, it seems to me that the question whether, in these complex conditions of light and dark, the plaintiff in the exercise of due care ought to see the rope, was one of fact, and that his conduct generally presented a question for the jury. Coxhead v. Johnson, supra.

The damages are not so excessive as to warrant our interference. I advise affirmance.

Judgment and order affirmed, with costs. All concur, except GAYNOR, J., who dissents.

GAYNOR, J. (dissenting). The defendants' two loaded wagons were going uptown along Third avenue in Manhattan. There had been a snow storm, and the snow was deep. Loaded wagons were drawn through the streets with difficulty, except when in the car tracks, from which the snow had been thrown to either side. When the defendants' wagons had to turn out at intervals for the cars they got into the deep snow. In such case a rope had to be sometimes extended from the rear of the front wagon to the shafts of the second so as to assist the latter (which had only one horse) for a short distance out of the snow to the railroad track, or to a cleared part of the street, when it was taken off. This had been done at intervals all the way uptown. The wagons got in that case between 22nd and 23rd streets, and the tow rope was put on. As they were crossing 23rd street on a slow walk the plaintiff was crossing Third avenue and walked up against the taut rope and was thrown. There is evidence to show he was hurrying and regardless; he says he was walking faster than he usually did. He says he could have seen the rope if he had looked, but that he did not expect it. It was 6:45 in the evening of January 16th. The street was lighted, and on a review of the facts, at least, we have the right to call upon our own experience, from which we know that such a rope would be seen by any one who was looking where he was going, which is the duty of due care of every one crossing streets, and the more crowded the street the more vigilance is required. The driver of the rear wagon was in his seat driving and looking ahead. There is evidence that he called out in warning to the plaintiff, who only says he did not hear it. The witnesses on the plaintiff's side say the rope was about twelve feet long—or that that was the distance from the rear horse to the front wagon; those on the defendants' say about five; but this difference is not material—ten to fifteen feet is a short distance, and, probably, about the safe one for the rear horse.

The defendants did nothing that they had not the right to do. For one team to assist another by a tow is a familiar if not an everyday occurrence in our streets, especially in times of snow and slush, which are frequent in this climate. The act was not one of negligence. To allow a recovery on the facts of this case would extend the law of negligence to a vague point. Those engaged in honest industry are already oppressed with far-fetched actions for negligence.

The charge of the learned trial judge does not point out any act or omission on which the jury might base a finding of negligence, as it is necessary always for a charge to do; and we therefore do not now know on what the jury may have based their verdict of negligence. A jury cannot be left free to make a finding on anything they see fit. In this case counsel had made many suggestions of negligence—that the rope was muddy, that it was dark colored from use, and therefore not so visible or observable as a new and yellow rope, that a larger rope would have been seen, that the rope should have been doubled for the same reason, that tags or flags or lanterns should have been hung from it, that a boy should have walked alongside of it, and the like. No one knows on what act or omission the jury may have based their finding of negligence. They may have based it on some of those suggested to them by counsel, or on something no one except themselves thought of.

The judgment and order should be reversed.