ERNEST SKELKA et al., Respondents, v METROPOLITAN TRANSIT AUTHORITY et al., Appellants.

Second Department, August 11, 1980

### APPEARANCES OF COUNSEL

*O'Brien, Kelly & Rode (John D. Kelly* and *Shawn P. Kelly* of counsel), for appellants.

*Crowe, McCoy, Agoglia, Fogarty & Zweibel, P. C. (Morris Zweibel* and *Patrick J. Fogarty* of counsel), for respondents.

### OPINION OF THE COURT

TITONE, J.

Plaintiff Ernest Skelka suffered severe personal injuries when he was either pushed or stepped from defendants' train as it was leaving the Patchogue station in Long Island. Although Skelka testified at the trial that he was pushed from the train by a trainman as it was moving, other evidence adduced at the trial by him and defendants indicated that the trainman induced him to step from the moving vehicle. On appeal from an interlocutory judgment in favor of Skelka and his wife after a bifurcated jury trial on the issue of liability, defendants assert that under the circumstances the trial court erred in charging the jury on an inducement theory of liability in view of the fact that Skelka testified he was pushed by the trainman. Subsumed in this issue is the question of what effect a trial court should give the testimony of a party which

is adverse to testimony of other witnesses, when the party's cause of action or defense is apparently predicated, *inter alia,* on the other testimony. Simply put, should such testimony be deemed a judicial admission and thus conclusive against the party giving it, thereby preventing him from obtaining the benefit of contradictory testimony from other witnesses, or, should such adverse testimony be treated similar to the testimony of any other witness called by either side.

Defendants also contend that the trial court erred in charging an operating rule of the railroad pertaining to the preventing of passengers from boarding or leaving a train in motion.

### ADVERSE TESTIMONY OF PLAINTIFF ERNEST SKELKA

#### CHARGE ON INDUCEMENT

At the trial plaintiff Ernest Skelka, 73 years of age at the time of the bifurcated trial on the issue of liability (February 28, 1979), testified that on December 1, 1974, at about 10:30 A.M., he and his wife accompanied his sister to the Patchogue railroad station of defendants. The sister was returning home after having spent the Thanksgiving holiday with the Skelkas. Since his sister at the time was 74 years of age, Skelka carried her valise onto the train for her. He placed it on a rack, said good-bye to her and turned to leave. According to the testimony of the injured plaintiff, the following then transpired:

"A. Well, I went down the stairs and then I seen that the train was moving. So I told the conductor that I got to get off. So he said, 'You know how to jump,' and I went one step down right on the level with the station platform and then he said, 'Now,' and that's all I remember and off I went, flying out.

"Q. Now, where was the conductor?

"A. He was in back of me.

"Q. And where were you when the train started to move?

"A. I was on the step * * *

"Q. When he said, 'Now,' and before you went off, did you feel anything?

"A. Well, I feel like a bump or so.

"Q. From where?

"A. From the back."

On cross-examination defense counsel skillfully elicited a

damaging admission from Skelka, as reflected in the following colloquy:

"Q. My question to you, sir, is, would you agree with me that it's dangerous to get off a moving train?

"A. It certainly is dangerous.

"Q. Thank you, sir.

"And, sir, is it your testimony to this Court and these jurors *that when you got down to that bottom step on this train, you did not intend to get off that train because it was moving? Isn't that right?*

"A. *That's right.*

"Q. *And you tell the jury that under no circumstances would you have gotten off?*

"A. *No.*

"Q. *Because that train was moving?*

"A. *That's right.*

"Q. *And because it would be dangerous to get off?*

"A. *That's right.*

"Q. *And because you know that a man could fall getting off a moving train, don't you?*

"A. *Certainly, yes * * ***

"Q. Mr. Skelka, you told us that the conductor said, 'You know how to jump.' Is that what he said?

"A. That's what he said.

"Q. You wouldn't jump because he said that, would you?

"A. No.

"Q. I mean, it wasn't the words of the conductor that caused you to jump, was it? * * *

"Q. *It wasn't the words of the conductor that made you go off the train, was it? It was the push, wasn't it?*

"A. *The push, yes.*

"Q. *In other words, you wouldn't jump just because the conductor said to jump, would you?*

"A. *No, no."* (Emphasis supplied.)

As part of his direct case plaintiff also introduced into evidence portions of the pretrial depositions of Patrick Hanley, the trainman. Hanley testified at his examination before trial that while he was still on the station platform he gave an all-clear hand signal to the conductor. At the time the train started in motion, which was 30 to 45 seconds after he

gave the all-clear hand signal, Hanley was on the bottom step of the car's vestibule. However, during the giving of the signal and the initial movement of the train, Hanley had gone from the platform, up three steps of the car and into the vestibule. At that point he saw plaintiff Ernest Skelka walking up the car aisle and saying that he wanted to "get off the train." Hanley then testified that he went back down the steps followed by plaintiff, stepped off the train while it was in motion, and said to plaintiff "Step down." Mr. Skelka proceeded to step from the moving train, fell, and landed on the concrete platform.

Testifying at the trial on behalf of defendants, Hanley stated on direct examination that he did not push Skelka off the train, that actually he was standing on the station platform in front of Skelka at the time the latter stepped or fell from the train. He also denied saying to Skelka, "You know how to jump."

However on cross-examination Hanley testified that the train had just started in motion before he stepped off it. He admitted that while the train was still in motion he told Skelka to "Step down" and that Skelka then ended up on the station surface.

In addition to instructing the jury that it should return a verdict in favor of the plaintiffs if it found that Mr. Skelka was pushed from the train while it was moving, the trial court gave the following alternative instruction which may be referred to as "the theory of inducement":

"If, however, you do not find by a fair preponderance of the credible evidence that the plaintiff was so pushed from the train, you will consider whether the plaintiffs, by a fair preponderance of the credible evidence, have established that the defendants breached any duty of ordinary care owed to the plaintiff, Ernest Skelka * * *

"The plaintiffs also contend that the defendants' agent and employee, Patrick Hanley, was guilty of negligence which was a proximate cause of this accident in that by his words, 'You know how to jump,' and 'Step down,' he importuned plaintiff to step from defendant's [sic] conveyance, to the station platform, while the train was moving. If you find that such words by defendants' employee were calculated to divert the plaintiff's attention from the danger involved in alighting from a moving train, or were designed to create in the plaintiff the confidence that the attempt could be made with safety, then

such words may be considered as some evidence of negligence on the part of the defendants' employee, provided further that such action was a proximate cause of the accident."

The extent to which a party is bound by testimony of his own which is adverse to other testimony presented during the trial which is favorable to him has been characterized as one of the most troublesome questions in the law of evidence (*Koserkoff v Chesapeake & Ohio Ry. Co.,* 427 F2d 1049, 1054, cert den 401 US 947, reh den 402 US 934; *Bowlin v Black & White Cab Co.,* 7 Ohio App 2d 133).

In those jurisdictions where the testimony of a party adverse to his contentions is regarded as a judicial admission, he is bound and concluded by such testimony (*Grau v Mitchell,* 156 Col 111; *White v Doe,* 207 Va 276), and he may not contradict the fact so admitted either by his own testimony or by other witnesses (*Stodgell v Mounter,* 344 SW2d 100 [Mo]). Furthermore, in such jurisdictions a party may not rely on other evidence such as that presented by his adversary to establish that a fact is contrary to his admission (*Elkin v St. Louis Public Serv. Co.,* 335 Mo 951).

However, although it has also been held that a party is generally bound and concluded by his own uncontradicted testimony, whether elicited on direct or cross-examination (*Reeder v Guaranteed Foods,* 194 Kan 386), with respect to contradicted testimony, in some jurisdictions a party is not deemed to be concluded by his own testimony but may have the benefit of more favorable evidence which contradicts his own (*King v Spencer,* 115 Conn 201; *Dowd Box Co. v Fireman's Fund Ins. Co.,* 351 Mass 113), even in situations where such evidence is supplied by the adverse party (*Pullman Co. v Teutschman,* 169 F2d 979; *Gleason v Mann,* 312 Mass 420), since a party may be mistaken in his testimony, like any other witness (*Mitchell v Lynn Fire & Police Notification Co.,* 292 Mass 165; *Alamo v Del Rosario,* 98 F2d 328). This rule has been held especially applicable where the testimony relates to an accident or similar event because in such instances testimony is particularly subject to inexactness of observation and memory (*Rueger v Hawks,* 150 Neb 834; cf. *Cox v Jones,* 138 Ore 327; *Kanopka v Kanopka,* 113 Conn 30). The testimony of a party to a fact, unless it amounts to such a stipulation or waiver as to have the force of a judicial admission, is ordinarily no more conclusive upon him than the evidence given by any other witness. It is the duty of the court or jury to

determine the fact not alone from the testimony given by the party, but from all the evidence in the case *(Kanopka v Kanopka, supra).*

■ Under the circumstances of this case I conclude that by giving the instruction on inducement, the trial court impliedly (and correctly) held that Mr. Skelka's testimony that he was pushed off the moving train should not be treated as a judicial admission, but simply as other evidence to be considered by the jury. In the instant case it may logically be inferred that upon realizing that the train was about to leave the station while he was still aboard, Skelka became understandably anxious and agitated, and extremely desirous of disembarking. Within seconds thereafter, and still in an agitated and excited state, he stepped or jumped from the train, landed on the station platform and was rendered unconscious. It is not beyond the realm of possibility or credulity that the rush of events conceivably blurred or colored Skelka's observations and memory of the occurrence. Thus, the use by defendant's counsel of the word "perjury" to describe Skelka's testimony, is gratuitous and unwarranted. "The plaintiff in most personal injury cases was subjected, just before he was hurt, to excitement enough to explain mistakes of observation and memory. In many cases * * * he was so badly hurt that he lost consciousness * * * 'There is no sound reason why the familiar doctrine that a party may contradict, though not impeach, his own witness, should not, if the circumstances are consistent with honesty and good faith, be applied when he is himself the witness. * * * In other words, the law recognizes the fact that parties, as well as other witnesses, may honestly mistake the truth, and requires juries to find the facts by weighing all the testimony, whatever may be its source.' " *(Alamo v Del Rosario,* 98 F2d 328, 331, *supra.)*

A party's testimony, uttered by a layman in the stress of examination, generally cannot with justice be given the conclusiveness of the traditional judicial admission in a pleading or stipulation, deliberately drafted by counsel for the express purpose of limiting and defining the facts in issue (McCormick, Evidence [2d ed], § 266). Instead of the unscrupulous party, it is the one who can be pushed into an admission by the ingenuity or persistence of counsel, or it is the unusually candid or conscientious party willing to speak the truth to his own hurt, who is penalized by the rule of conclusiveness

(McCormick, Evidence [2d ed], § 266; see, also, 9 Wigmore, Evidence [3d ed], § 2594*a).*

Although the issue as to whether testimony of a party adverse to his cause of action or defense should be treated as a conclusive admission or merely as other testimony in a case has been greatly discussed and adjudicated in a number of other jurisdictions, in this State there has been surprisingly little case law on the subject. Even in the few cases where the issue was present, analysis thereof has been lacking in depth.

For example, in *De Carlo v New York City Tr. Auth.* (42 Misc 2d 751, affd 23 AD2d 549), the jury found against both defendants, operators of motor vehicles, which collided in an intersection in Manhattan, and in favor of all eight plaintiffs. One of the defendant operators moved for dismissal of each plaintiffs' complaint on the ground that since one of the plaintiffs (a passenger in one of the vehicles) gave testimony at the trial exculpating him of any suggestion of negligence, such plaintiff was not permitted to avail herself of other testimony in the case imputing negligence to him. The Trial Judge, in denying such motion, stated, *inter alia* (pp 753-754):

"No authority in our State courts has been called to my attention and I have found none upon which I could build the conclusion that this doctrine of 'informal judicial admission' has ever been applied in cases involving a single-party plaintiff, let alone a case involving multiple-party plaintiff innocent passengers suing the operators of all colliding vehicles.

*"I think I am safe in saying that in our jurisdiction courts have become increasingly concerned with the wisdom and necessity of keeping 'alive' down to the very end of the trial, the case of an innocent passenger or pedestrian, victim of a motor vehicle accident involving more than one vehicle."* (Emphasis supplied.)

However, although the afore-quoted statement of the trial court strongly indicated that the trial court did not favor the "informal judicial admission" in cases involving a single-party plaintiff, it avoided making any definitive statement in that regard when it further held that it was unnecessary to apply the doctrine in *De Carlo (supra),* since it was doubtful that it would ever be invoked in a case such as *De Carlo (supra,* p 754), where there are several plaintiffs, "only one of whom would be thereby nonsuited although all of them are equally innocent victims of the same accident".

Since the First Department affirmed *De Carlo* (42 Misc 2d

751, *supra)* without comment concerning the plaintiff-respondent whose testimony exculpated the defendant that moved for dismissal based on her testimony, it seems evident, at least in personal injury cases where sharp issues of fact are raised at trial, that the First Department likewise does not adhere to "the judicial admission" concept so as to preclude testimony of witnesses which is both favorable to a party and contrary to the party's version of the events.

Moreover, from still other First Department cases inferences may be drawn that such court has opted for the proposition that a party in a personal injury action whose testimony is adverse to him, should not be precluded from having the case presented to the jury when contradictory testimony inures to his benefit from other witnesses. For example, in *Lazar v Westchester St. Transp. Co.* (268 App Div 387), plaintiff testified that defendant's bus ran into his car and that he had brought his car to a standstill before the accident. The trial court charged that if the jury found both vehicles were in motion, the verdict must be for defendant. In reversing a judgment in favor of defendant and ordering a new trial, the First Department held that the trial court's instruction constituted prejudicial error since whether plaintiff's automobile was in motion or standing still at the moment of impact was not determinative of defendant's negligence or plaintiff's contributory negligence (see, also, *Jacobs v Gelb,* 271 App Div 101 [1st Dept]; contra *Lifton v Title Guar. & Trust Co.,* 263 App Div 3 [1st Dept]).

Inferential support for the flexible standard rather than a rule of conclusiveness in this area may be adduced from *Bird v Long Is. R. R. Co.* (11 App Div 134), decided by this court in 1896. In *Bird,* a brakeman, testifying in an action to recover for injuries received while coupling cars, was held not bound by his estimate, which was adverse to him, of the distance between the moving and the standing car at the time he went between them, as against other evidence. At one point in his testimony plaintiff testified (p 136) that he "was 30 feet from the stationary part of the train he stepped in before a moving train coming towards him by his own direction". He intended to catch in his hand a link on the front end of the moving train and lead it to the stationary cars. Other witnesses testified that the distance between both sections was much less when plaintiff attempted to link them. In reversing the trial court's dismissal of the complaint on grounds which

included a finding that the proof affirmatively showed plaintiff guilty of contributory negligence, and ordering a new trial, this court stated, *inter alia:*

"If the act of going between the cars while they were farther apart than was necessary to make the coupling was an act of negligence, then it was for the jury to say, upon all this testimony, whether such act had been committed.

*"The statement of plaintiff in this regard is not conclusive or controlling in view of the other evidence in the case." (Bird v Long Is. R. R. Co.,* 11 App Div 134, 137, *supra;* emphasis supplied.)

■ Defendants also assert that it was error for the trial court to charge the jury on the inducement theory since Skelka's testimony removed inducement as an issue and clearly precluded the trial court from submitting that ground as negligence. I disagree. In my opinion, the facts adduced at the trial permitted alternate, albeit inconsistent, theories of liability. Whether the jury found that Hanley either pushed Skelka from the moving train or induced him to step or jump from it while it was moving, it could have concluded that defendants' employee was negligent, that his actions were the proximate cause of the accident, and that Skelka was not contributorily negligent (cf. *Gustavson v Southern Blvd. R. R. Co.,* 292 NY 309). An instruction in the alternate or disjunctive is proper when all the hypotheses so joined are proper questions for the jury and are supported by the evidence (88 CJS, Trial, § 327; cf. *Billingsley v Kansas City Public Serv. Co.,* 239 Mo App 440; *Freer v Rowden,* 108 Ill App 2d 335). In an action for injuries sustained by an infant plaintiff who departed from a railway car and was dragged by the train when a schoolmate passenger grabbed onto and held the infant's hand, this court held that whether the guard's signal to start the train, or, if it had started, his failure to stop it by pulling the emergency cord, constituted negligence was for the jury *(Israelson v New York City Tr. Auth.,* 12 AD2d 799). The Court of Appeals affirmed, without opinion (9 NY2d 997).

### CHARGE ON OPERATING RULE OF DEFENDANTS' RAILROAD

The trial court in its instructions to the jury also charged that body as to rule 4154-A of defendants' railroad operating rules, which provides as follows: "Conductors must not permit their train to be moved while *passengers* are getting on or off. In low platform territory, train employees must, as far as

possible, prevent passengers from getting on or off while train is in motion." (Emphasis supplied.)

Defendants argue on appeal, *inter alia,* that rule 4154-A contemplated the boarding and alighting of passengers at stations and has no application to an "assister" who neglected to make his intention known. I disagree with defendants' reasoning and conclusion. First of all the contention that Skelka's desire to leave the train was not communicated to the railroad's employee, Hanley, is not supported by the evidence. Hanley admitted seeing Skelka coming from the aisle to the platform, that the latter specifically said he wanted to disembark, that the train had not started until Skelka had reached the first step of the platform, and that he told Skelka to step down. Second, common carriers such as defendants have a general duty to accept a passenger and his or her luggage whether such person be of tender age, young, middle age or elderly, or in good health or infirm. It is common knowledge that in the absence of any service provided by a railroad carrier to assist passengers unable to carry luggage aboard or from a train because of age or infirmity, persons other than passengers are permitted to board a train to furnish such assistance.

By custom one who goes upon a train or streetcar to assist a passenger in entering or leaving such vehicle is an invitee. The carrier owes such person due care for his safety and protection while he is entering the vehicle, while he is in it, *and when he is leaving it, especially where a passenger requires assistance which the employees of the carrier do not undertake to render* (13 CJS, Carriers, § 732; cf. *Barrett v Brooklyn Hgts. R. R. Co.,* 188 App Div 109). Where the purpose of a person, not a passenger, in entering, *inter alia,* a train to assist a passenger is known to a conductor or other employee in charge of a train, *it is the duty of the carrier to give* him a reasonable opportunity and time to render such assistance and leave the vehicle (13 CJS, Carriers, § 732; cf. *Barrett v Brooklyn Hgts. R. R. Co., supra).*

In my opinion the operating rule (rule 4154-A) was read to the jury by the trial court in connection, and consistent, with its additional instruction that the railroad was only obligated to exercise ordinary and reasonable care to persons boarding or disembarking from the train. Moreover, I believe the trial court was correct in ruling that the word "passenger" in the rule should not be given a narrow interpretation but that the

rule was designed for the safety of people getting on or off a train whether they be passengers or not. Finally, it should be noted that in recent decisions appellate courts of this State have held that a single standard of care should be applied without distinction among licensees, trespassers or invitees, to wit, that the duty of the owner of the property should not vary with the person using the property, but rather, that the owner should act reasonably to maintain safe conditions in view of all the circumstances, including the likelihood of injury, the seriousness thereof and the burden of the risk. Also the likelihood of the plaintiff's presence should be a primary independent factor in determining foreseeability (*Basso v Miller,* 40 NY2d 233, 241; *Scurti v City of New York,* 40 NY2d 433, 441-443; *Supples v Canadian Nat. Ry. Co.,* 53 AD2d 1017). By a parity of reason rule 4154-A should apply, *inter alia,* to passengers of defendants' railroad and persons who assist passengers in boarding trains or alighting therefrom.

Accordingly, the interlocutory judgment in favor of plaintiffs should be affirmed, with costs.

MOLLEN, P. J., HOPKINS and MARTUSCELLO, JJ., concur.

Interlocutory judgment of the Supreme Court, Suffolk County, entered March 22, 1979, affirmed, with costs.