■ NANCY L. SALZMAN et al., Appellants, v ALAN S. ROSELL, D.D.S., P. C., et al., Respondents.—Kane, J. Appeal from an amended judgment of the Supreme Court in favor of defendants, entered November 13, 1985 in Saratoga County, upon a verdict rendered at Trial Term (Ford, J.).

Plaintiff Nancy L. Salzman (hereinafter plaintiff) suffers from a dysfunction of the temporomandibular joint (TMJ), which is the joint between the lower jawbone (mandible) and temporal bone on the side of the skull separated by a disc. The TMJ is prone to a wide variety of afflictions, as well as considerable disagreement among experts as to the causes and treatment thereof.

In this action, plaintiff alleges that the dental treatment by defendant Alan S. Rosell (hereinafter defendant) was negligently performed and caused her TMJ dysfunction. She seeks money damages for dental malpractice, breach of contract, and lack of permission and informed consent. At the conclusion of plaintiff's case, the trial court, upon defendants' motion, dismissed the cause of action for malpractice and breach of contract, leaving to the jury the two remaining causes of action upon which they found for defendants. During the trial, plaintiff produced proof that in March 1982, she made an appointment with defendant to have her teeth cleaned and checked. At that time, she did not exhibit any symptoms of this disorder. After examination, defendant prescribed a treatment plan for her which included the replacement of eight fillings and a bite adjustment. Plaintiff returned on June 9, 1982 to have her teeth cleaned and the fillings replaced, but

requested a second opinion before permitting a bite adjustment. Following this visit, plaintiff experienced pain in her teeth. She returned on June 28, 1982 to have her filings lowered in order to alleviate the pain, which required her to remain in the dental chair for one hour and 20 minutes. At the conclusion thereof, plaintiff was charged $150 for a bite adjustment. The next morning, plaintiff was unable to open her mouth. She returned to defendant that day, and, through manipulation of her jaw, he was able to open her mouth.

Subsequently, plaintiff began to experience many discomforts, including earaches, headaches, a stiff neck, muscle spasms and clicking of her jaw. She again visited defendant on July 20, 1982, at which time he readjusted her bite and took impressions of her teeth. During the next month, plaintiff's symptoms persisted. In order to alleviate these symptoms, defendant fitted plaintiff with a bite appliance which required her to visit defendant at frequent intervals to have the bite appliance adjusted.

Plaintiff ceased treatment with defendant in October 1982. At that time, she consulted another dentist, Dr. Abraham N. Finkel, about her condition. Since her symptoms persisted and her condition worsened, Dr. Finkel recommended that plaintiff see Dr. Mark Cury, who did not treat plaintiff but instead referred her to Dr. Steven Messing, who undertook treatment. Plaintiff's difficulties continued while she was being treated by Dr. Messing, who ultimately recommended treatment by a psychiatrist and a physical therapist. In September 1983, Messing suggested that plaintiff go to Rochester for tests under the care and treatment of Dr. Richard Katzberg. During this period, plaintiff also traveled to New York City on three different occasions to be treated by Dr. Harold Gelb, an expert in the field of TMJ disorder. Nevertheless, plaintiff's symptoms continued to grow progressively worse, resulting in corrective surgery by Dr. Franklin Dolwick in San Antonio, Texas, followed by restorative dentistry by Dr. Peter Dawson in St. Petersburg, Florida.

This action was commenced on or about October 20, 1983 and the trial thereof began on October 28, 1985. After plaintiffs had submitted their proof and rested, defendants moved on the record in chambers to dismiss all causes of action on the ground that plaintiffs had failed to establish a prima facie case; specifically, on the ground that there was no rational basis upon which the jury could find negligence because there was no testimony by any expert that defendant deviated from the requisite standard of care in his treatment of plaintiff. In

support of his argument, defense counsel submitted a steno-graphic transcript of that portion of the previous day's testimony of Dr. Gelb, to whom the hypothetical question seeking his opinion whether there had been a deviation from the requisite standard of care had been submitted. The transcript of his testimony demonstrates that while Dr. Gelb testified that he had an opinion in response to the hypothetical question, when asked, "What is that opinion?", his response did not include a direct answer to the question propounded. Rather, he presented an outline of each and every aspect of defendant's treatment of plaintiff with which he disagreed.

Although these specific faults may have provided a basis for Dr. Gelb's opinion that there was a deviation from the requisite standard of care, the opinion as an ultimate fact cannot be inferred, absent an express statement to that effect. The issue is not whether defendant's treatment caused plaintiff's TMJ, for cause seems well established and, standing alone, is not malpractice. The critical issue is whether defendant deviated from the requisite standard of care in the course of providing treatment, and it is on that issue, upon which plaintiff must bear the burden of proof, that the lack of expert testimony fails to establish a prima facie case of malpractice (see, Gibson v D'Amico, 97 AD2d 905, lv denied 61 NY2d 603; Mossman v Albany Med. Center Hosp., 34 AD2d 263; see also, Schreiber v Cestari, 40 AD2d 1025; Geilskie v State of New York, 10 AD2d 471, affd 9 NY2d 834). Accordingly, it would appear that the trial court properly dismissed the cause of action for malpractice and breach of contract (see, CPLR 4401; Hylick v Halweil, 112 AD2d 400). Although breach of contract is a separate and distinct cause of action, not dependent upon proof of any deviation in the standard of care (Liebler v Our Lady of Victory Hosp., 43 AD2d 898), there is no proof of the terms of any agreement between the parties.

However, we must address an additional and more troublesome issue. As previously indicated, defense counsel offered a portion of the transcript of Dr. Gelb's testimony at the time of the motion to dismiss in chambers. Immediately upon the receipt thereof, plaintiff's counsel requested to speak to the correction of the record by recalling Dr. Gelb to ask him the particular missing question, noting that, based upon his trial notes taken at the time Dr. Gelb testified, there were two words missing in response to the question whether defendant deviated from the requisite standard of care, namely, "He did". Although neither the trial court nor defense counsel have any recollection of or written notation indicating these

words were spoken, it does appear in the record that the court interrupted the witness as he began to answer with the instruction, "Doctor, please keep your voice up".

Under the circumstances, it is our view that the request to reopen should have been granted at that time, rather than devoting the rest of the day to argument of the motion. A plaintiff's motion to reopen and present additional proof, made immediately after he has rested and before any offer of proof by the defendant, should be granted in the absence of a showing of prejudice to the defendant (Tripi v Stillwell, 22 AD2d 759; 4 Weinstein-Korn-Miller, NY Civ Prac ¶ 4401.05). Thus, the question distills to whether reopening the case would prejudice defendants. We think not, for it appears that the expert witness that the defense asserted would not be available the following week was present in the courtroom and could have testified that day. Whether Dr. Gelb was immediately available is, in our view, not significant, for his testimony could follow that of defendants' expert without prejudice to the defense. Unlike the circumstances presented in Petroleum Serv. Co. v Steel City Painting Co. (115 AD2d 872), we are of the view that, in the absence of prejudice to defendants, it was an abuse of discretion not to grant plaintiff's motion to reopen and, accordingly, there should be a reversal and a new trial granted (see, Iulio v Ford Motor Co., 31 AD2d 820).

Judgment reversed, on the law and the facts, without costs, and matter remitted to Supreme Court for a new trial. Mahoney, P. J., Kane, Main, Weiss and Levine, JJ., concur.