■ BARBARA BRACCI, Appellant, v WILLIAM R. HOPPER, M.D., P. C., et al., Respondents. [711 NYS2d 256] —Peters, J. Appeal from a judgment of the Supreme Court (Mugglin, J.), entered March 12, 1999 in Delaware County, upon a decision of the court in favor of defendants.

This medical malpractice action stems from an injury to plaintiff's left arm sustained as a result of a fall on March 7, 1993. Upon being brought to the local emergency room, X rays revealed a fracture, prompting a call to the on-duty orthopedist, defendant William R. Hopper. Hopper, having treated plaintiff since 1986, was aware of her aversion to surgery. Upon determining that she sustained a severe Smith-type fracture, he alleged that he advised her of the severity of the injury yet treated her with a closed reduction procedure since she became increasingly upset upon his mention of surgery and anesthesia. After rechecking his placement of the bones through a second set of X rays, he set up a follow-up visit. Plaintiff denied that she was advised of the severity of her injury or that she needed surgery. Hospital records do not indicate that she was given such advice; Hopper acknowledged that his failure to record this information was error.

On March 11, 1993, plaintiff saw Hopper at his office for her follow-up visit; additional X rays revealed that the bones were appropriately positioned. On vacation from March 13 to March 21, 1993, Hopper arranged coverage with another doctor and a physician's assistant, defendant James Cooros. When plaintiff began to experience pain on the evening after her visit, she was referred to Cooros who contacted her the following day. Despite plaintiff's symptoms subsiding, Cooros ultimately examined her at the hospital without a further recommendation for treatment.

Plaintiff appeared for her follow-up appointment with Hopper on March 31, 1993, during which additional X rays were taken. Hopper testified that these X rays showed some slippage, common in Smith-type fractures, which he showed to plaintiff and fully discussed with her. Explaining that she would have "permanence" from the injury, he testified that she became extremely agitated and continued to refuse the option of surgery. Given her reaction, he chose to keep her in the cast for another week. Again, Hopper's records did not reflect that he advised her of surgical options and plaintiff denied ever being told of anything other than the fact that the injury was healing properly.

On April 7, 1993, plaintiff's cast was removed and physical therapy was recommended. She testified that she became extremely upset because she knew immediately that her arm was misshapen. Upon her refusal to move her arm, she contended that Hopper's demeanor changed, painfully twisting her arm and causing her to cry. Despite her "instincts" that there was something wrong, she returned to him on April 28, 1993 for an unrelated injury to her neck. During this appointment, Hopper testified that he took another set of X rays of her arm and determined that the disfigurement and likely future discomfort or pain could be remedied by a "Derrick resurrection" which could be performed under a local anesthetic. Now reflected in his medical notes, he so believed that he had persuaded her to undergo this relatively innocuous procedure that he had his office schedule her for the surgery. Plaintiff did not show up at the scheduled time and has not returned to Hopper since. Her testimony reflects that at such appointment, she learned that the bone had "split" and that this surgical procedure was mentioned solely to remedy the cosmetic deformity.

Plaintiff immediately sought two successive opinions from other physicians who recommended more invasive surgeries or the option of the Derrick procedure. When the last physician stated, on a subsequent visit, that the probability of success at that point was low due to the passage of time, she abandoned the idea of corrective surgery. At trial, each of the parties presented the testimony of orthopedic experts; Hopper's expert opined that the closed reduction performed by him met the requisite standard of care whereas plaintiff's expert agreed that if, in fact, plaintiff had refused the recommended surgery, Hopper's course of treatment met the accepted standard of care in the regional medical community. At the close of all the evi-

dence, all defendants* moved for judgment as a matter of law. Supreme Court dismissed plaintiff's claims, prompting this appeal.

Challenging Supreme Court's determination that plaintiff failed to present a prima facie case of medical malpractice, we note that plaintiff was required to prove, through a medical expert, that Hopper breached the standard for good and acceptable care in the locality where the treatment occurred and that his breach was the proximate cause of her injury (*see, Perrone v Grover*, 272 AD2d 312; *Gibson v D'Amico*, 97 AD2d 905, *lv denied* 61 NY2d 603; *see also, Spensieri v Lasky*, 94 NY2d 231; *Rossi v Arnot Ogden Med. Ctr.*, 268 AD2d 916, *lv denied* 95 NY2d 751; *Salzman v Alan S. Rosell, D.D.S., P. C.*, 129 AD2d 833). The record reveals that plaintiff's expert reviewed each and every decision rendered by Hopper and concluded that while there was no issue as to the care rendered on both the March 7 and March 11, 1993 visits, the X rays taken on March 31, 1993 required Hopper to advise plaintiff of the deformity, the loss reduction, surgical options, and the benefits and risks of surgery. Such expert conceded, however, that if Hopper so advised plaintiff as he contended and she thereafter refused surgery, there would have been no breach of the standard for good and acceptable care. The expert further conceded that Hopper's treatment on April 7 and April 28, 1993 would also have been acceptable under those circumstances and that the ultimate recommendation for a Derrick procedure was an acceptable alternative for plaintiff's condition.

Hence, the issue distilled to one of credibility and while we are " 'empowered in a nonjury case to independently consider the probative weight of the evidence and the inferences to be drawn therefrom, deference * * * [will be] accorded the trial court's factual findings particularly where they rest largely upon an assessment of credibility' " (*Mauro v Degroodt*, 271 AD2d 892, 893, quoting *Jump v Jump*, 268 AD2d 709, 710; *see, Munno v State of New York*, 266 AD2d 694). In fully reviewing the evidence here presented to properly assess plaintiff's contentions that such findings are against the weight thereof, we find ample support for crediting Hopper's testimony that he

---

* Plaintiff commenced an action against the owner of the premises where the injury was sustained. The two actions were joined for trial. Although the owner of the premises made an unsuccessful motion for summary judgment, ultimately affirmed by us (*see, Bracci v Roberts*, 217 AD2d 897), the action was dismissed after trial on the defendant's motion since Supreme Court found plaintiff's testimony incredible. In the medical malpractice action, all claims against Cooros were dismissed; the challenge thereto was abandoned on appeal.

advised plaintiff of available surgical options and that she nonetheless refused surgical treatment. Notably, in reviewing Supreme Court's assessment of plaintiff's credibility and wholly conflicting testimony, we cannot ignore her testimony in the premises liability portion of the trial which was undermined by numerous inconsistencies as to the manner in which the accident occurred. Such inconsistencies were further mirrored in her recitation of her emotional state at the time she presented to the emergency room or any time the issue of surgery was mentioned by either Hopper or the physicians she independently consulted with after her termination of her relationship with Hopper. Their similar observations are noted in documentary evidence admitted during the trial.

With these inconsistencies and others, we find ample evidence supporting Supreme Court's determination that plaintiff did not establish that Hopper's care deviated from accepted medical practice.

Cardona, P. J., Mercure, Carpinello and Graffeo, JJ., concur. Ordered that the judgment is affirmed, with costs.