[725 NYS2d 350]

Robert A. Knutson et al., Appellants, v Richard H. Sand et al., Respondents.

Second Department, May 21, 2001

## APPEARANCES OF COUNSEL

*Sanders, Sanders, Block & Woycik, P. C.,* New York City
(*Mischel, Neuman & Horn, P. C.,* [*Scott T. Horn*] of counsel),
for appellants.

*Greenfield & Hastings,* Jericho (*John F. Hastings* and *Sean Dwyer* of counsel), for respondents.

## OPINION OF THE COURT

LUCIANO, J.

The question presented for review appears to be one of first impression, to wit: whether a plaintiff is required to present expert dental testimony expressly stating that the conduct of the defendant oral surgeon was a "departure from the requisite standard of care," notwithstanding the fact that during the plaintiff's case-in-chief, the defendant oral surgeon testified that the conduct forming the basis of the alleged dental malpractice was to be avoided during implantation of titanium fixtures.

In October 1994, the defendant Richard H. Sand, M.D., D.D.S., performed tooth implant surgery on the plaintiff Robert A. Knutson (hereinafter the plaintiff). Subsequent thereto, the plaintiff complained of pain, numbness, drooling, and swelling in his lower jaw. This action for dental malpractice thereafter ensued. The plaintiffs' theory of the dental malpractice was that the defendant oral surgeon improperly implanted two of the three titanium fixtures into the inferior alveolar nerve canal of the right mandibular bone, one of which extended into the alveolar nerve, and one of which obliterated the alveolar nerve.

There is no argument that in order to prove a prima facie case of dental malpractice, a plaintiff must show that (1) there was a deviation or departure from the requisite standard of dental practice, and (2) the departure from the requisite standard of practice was a proximate cause of the complained of injury (*see, Prete v Rafla-Demetrious,* 224 AD2d 674).

The plaintiffs called two expert witnesses to testify as to the standard of care required in the implantation of titanium fixtures. Each of these expert witnesses testified that a primary concern in planning a case for dental implants was that care should be taken to avoid intrusion of the titanium fixtures into the inferior alveolar nerve canal of the mandibular bone. Additionally, these experts testified that it is necessary to avoid an intrusion of a foreign body, to wit the titanium fixtures, into

the inferior alveolar nerve canal in order to prevent damage to the nerves therein. A third expert, a neuroradiologist, testifying on behalf of the plaintiffs, confirmed that one of the implants passed through the canal and that one intruded into the inferior alveolar canal of the right mandibular bone. Finally, all of the plaintiffs' experts testified that the placement of two of the titanium implants into the inferior alveolar canal was a competent producing cause of the plaintiff's injuries.

Radiographic evidence supported the plaintiffs' contention that the distal titanium implant was in the middle of the inferior alveolar canal and completely obliterated the inferior alveolar nerve. A second titanium implant was partially into the alveolar canal and the third titanium implant was behind the foramen. None of the plaintiffs' experts, however, stated in specific words or phrases that the defendant oral surgeon's act of placing the titanium fixtures into the inferior alveolar nerve canal of the mandibular bone constituted a departure from the requisite standard of oral surgery.

Noteworthy is the fact that in this action, the plaintiffs called the defendant oral surgeon to testify during their case-in-chief. During that testimony, the plaintiffs' counsel inquired of the defendant oral surgeon what was the accepted protocol of performing dental implant surgery. At several instances during the defendant oral surgeon's testimony, he testified that it is vital to the success of dental implant surgery that an oral surgeon avoid going below the bone ridge and intruding into the inferior alveolar canal of the mandibular bone or impinging on the inferior alveolar nerve. In fact, the defendant oral surgeon agreed with a statement, read into the record from written authority, that the inferior alveolar nerve must be avoided during dental implant surgery. The defendant oral surgeon further conceded that prior to the surgery he told the plaintiff that he was not supposed to place the titanium fixture into the inferior alveolar canal, but that there was a risk that this could occur. The question, therefore, whether the implantation of titanium fixtures into the inferior alveolar canal of the mandibular bone, although concededly an act to be avoided, was merely a risk of the implantation procedure as opposed to a departure from the requisite standard of care, was never given to the jury to answer.

This raises an even more exquisite question: whether and when does a risk of a procedure become a departure from the requisite standard of care.

The testimony of these experts that it was imperative to avoid violation by the titanium implants of the inferior alveolar canal should be accorded great probative force in determining whether the defendant oral surgeon's conduct was a departure from the requisite standard of oral surgery. A determination that the defendant oral surgeon's conduct was a departure from the requisite standard of oral surgery is not contrary to reason, common conclusion, or natural and physical cause. So long as the inference of departure from the requisite standard of care is fairly supported by the evidence and consistent with a party's argument or theory of the case, it may be drawn.

While there was no allegation by the plaintiffs of lack of informed consent, curiously, the defendant oral surgeon contended that it was a disclosed risk of the procedure that the titanium implants could intrude into the inferior alveolar canal, but in any event denied that this occurred. These all constitute questions of fact for the jury.

Posited against the background of plaintiffs' experts' testimony, it is pivotal to our determination that during the plaintiffs' case-in-chief the defendant oral surgeon, testifying as an expert, admitted that he was to avoid placing a titanium fixture into the inferior alveolar nerve canal of the mandibular bone.

It is well settled that a plaintiff in a medical/dental malpractice action may call as a witness the doctor, dentist, or other health care provider against whom the action is brought in order to elicit testimony both as to fact and opinion (*see, McDermott v Manhattan Eye, Ear & Throat Hosp.,* 15 NY2d 20, 27).

Since all the experts agreed that intrusion into the inferior alveolar canal of the mandibular bone must be avoided, the occurrence of that act compels the inference that the intrusion was a departure from the requisite standard of dental practice.

Curiously, the defendant oral surgeon's defense is predicated on the position that intruding into the alveolar canal of the mandibular bone is a risk of the implant procedure, but that in any event he did not do it. This alternative theory of the defense was supported by the defendant oral surgeon's expert dental witness. It is submitted that these theories are inapposite and would cause the jury to speculate.

The circumstances herein are unique in that the defendant oral surgeon, testifying as an expert, admitted that he was not supposed to place a titanium fixture into the inferior alveolar

canal. It cannot be questioned that the defendant oral surgeon's admission under oath was not made in ignorance of the facts, or in an abnormal state of mind, or made casually, thoughtlessly, or insincerely (*see, Gangi v Fradus,* 227 NY 452, 457). Where, as in this case, the admission is made understandingly and deliberately, is a fact clearly within the knowledge of the declarant, and is made under circumstances conducive to veracity, the jury must be given the opportunity to determine whether the evidence should be given slight consideration or its full weight and value (*see, Gangi v Fradus, supra*).

By enacting CPLR 4515 in 1962, the New York State Legislature abolished the common-law rule requiring that a hypothetical question be posed to an expert in order to elicit an expert opinion. The statute permitted an expert witness to state what he or she knows in natural or conventional language and thought (*see,* 2d Prelim Report of Advisory Comm on Practice and Procedure, 1958 NY Legis Doc No. 13, at 263). The Legislature, thus, trumpeted its intention to relax the rigidity of the common law. By analogy, in considering the substance of the legislative commentaries, the courts have made clear their intention to focus on the probative force of opinion evidence, rather than a particular combination of words and phrases used to express the opinion. This guards against the defeat of expert opinion "by semantics if it is reasonably apparent that the [witness] intends to signify a probability supported by some rational basis" (*Matter of Miller v National Cabinet Co.,* 8 NY2d 277, 282; *see also, Matott v Ward,* 48 NY2d 455, 460-461). The learned scholar, John Henry Wigmore, opined "[t]he hypothetical question, misused by the clumsy and abused by the clever, has in practice led to intolerable obstruction of truth" (2 Wigmore, Evidence § 686, at 962 [Chadbourn rev 1979]).

A court's duty, therefore, is not to reject opinion evidence because non-lawyer witnesses answer questions that are not hypothetical or fail to use the words and phrases preferred by lawyers and judges, but rather to determine whether the whole record exhibits substantial evidence that there was a departure from the requisite standard of care (*see, Matter of Ernest v Boggs Lake Estates,* 12 NY2d 414, 416; *Koller v Manhattan Eye, Ear & Throat Hosp.,* 168 AD2d 671, 672).

In the circumstances of this case, there was no need for experts to state a special or particular combination of words and phrases that the conduct of the defendant oral surgeon constituted a deviation or departure from the requisite stan-

dard of care (*compare, Sohn v Sand,* 180 AD2d 789, 790). Such a combination of particular words is ineluctably unnecessary in view of the defendant oral surgeon's express admission that he was not to permit titanium fixtures to intrude into the inferior alveolar canal of the mandibular bone. It is noteworthy that the defendant oral surgeon's attorney had every opportunity to cross-examine the plaintiffs' experts to discredit their testimony and to require them to specify the data and other criteria supporting their opinions that the defendant oral surgeon's conduct should have been avoided. The attorney for the defendant oral surgeon also had the opportunity to rehabilitate his testimony with respect to this admission. Nevertheless, he was unable to dissuade the experts from their opinions that the implantation of the fixtures violated the inferior alveolar canal and caused the plaintiff's injuries, or to rehabilitate the defendant oral surgeon's testimony.

Law is not only logic, but common experience, and in this case both logic and common experience tell us that the act of placing a titanium fixture into the inferior alveolar canal of the mandibular bone was a departure from the requisite standard of dental care. The inescapable conclusion from this common denominator of the case indelibly marks the conduct of the defendant oral surgeon as a departure from the requisite standard of dental practice.

Since the experts' testimony herein, taken as a whole, permits a logical conclusion satisfying the plaintiffs' burden of proof or of going forward, as the case may be, the experts' opinions need not be phrased in terms of a specific level of certainty. It is, therefore, the obligation of the court to consider the totality of the testimony of the plaintiffs' experts and the admission of the defendant oral surgeon in order to determine whether sufficient relevant information has been conveyed to the jury to enable it to reach its own conclusions on the merits of the parties' opposing positions, to wit, the reasonable inferences that the conduct was merely a risk of surgery, or it was a departure from the accepted standard of dental care, or that the intrusion into the inferior alveolar canal never happened (*see generally, Matott v Ward, supra,* at 462).

Since there is ample evidence that the defendant oral surgeon's conduct should have been avoided and that it was a proximate cause of the plaintiff's injuries, the unanswered questions were whether the conduct may be classified as a departure from the requisite standard of dental care, whether the conduct was a risk of the procedure, or whether it did not

happen at all. Under these circumstances, the questions of fact and credibility were quintessential jury functions.

Additionally, the statement by the defendant oral surgeon made under oath during trial that he was not supposed to intrude into the inferior alveolar canal of the mandibular bone constitutes a judicial admission. A party's statement, made during testimony at a trial, which is adverse to his or her contention and is uncontradicted by other witnesses' testimony, constitutes a judicial admission (*see, Matter of Union Indem. Ins. Co.*, 89 NY2d 94, 103; *see generally, Skelka v Metropolitan Tr. Auth.*, 76 AD2d 492). Although such an admission is not conclusive, it is evidence of facts which bear upon the ultimate issue to be resolved (*see, Matter of Union Indem. Ins. Co., supra,* at 103). As trial evidence, an admission by the defendant must be submitted to the jury, with all the other evidence, for consideration of its probative effect and value (*see, Gangi v Fradus, supra,* at 456).

Based upon the facts in this case, a jury would not have been placed in a position to speculate as to the inferred ultimate conclusion that the defendant oral surgeon departed from the requisite standard of dental practice, notwithstanding that the plaintiffs' experts did not expressly articulate a particular or special combination of words and phrases to that effect (*cf., Salzman v Alan S. Rosell, D.D.S., P. C.*, 129 AD2d 833, 835). Inasmuch as the plaintiffs' experts opined that the conduct of the defendant oral surgeon was to be avoided and was a proximate cause of the plaintiff's injuries, together with the defendant oral surgeon's judicial admission that he was not supposed to intrude into the inferior alveolar canal of the mandibular bone, an inference could be drawn that this complained-of conduct was a deviation or departure from the requisite standard of care to be followed with respect to dental implantations. Under these circumstances, the weight and probative effect of the defendant oral surgeon's judicial admission should have been determined by the jury, not the court (*see generally, Gangi v Fradus, supra,* at 456). Since the question of the defendant oral surgeon's liability was not submitted to the jury, the matter must be remitted for a new trial.

FLORIO, J. P., McGINITY and FEUERSTEIN, JJ., concur.

Ordered that the judgment is reversed, on the law, the motion is denied, the complaint is reinstated, and a new trial is granted, with costs to abide the event.