■ NATASHA ALVARADO, Respondent, v CARY H. MILES, D.D.S., Appellant. [820 NYS2d 39]—

---

Order, Supreme Court, New York County (Alice Schlesinger, J.), entered on or about August 22, 2005, which denied defendant's motion for summary judgment, reversed, on the law, without costs, the motion granted and the complaint dismissed. The Clerk is directed to enter judgment accordingly.

In this dental malpractice action, plaintiff alleges that she was injured as a result of defendant's departure from accepted dental practice, and that defendant's negligence was the proximate cause of the injuries she suffered following extraction of her wisdom teeth.

In May 2002 defendant extracted one of plaintiff's wisdom teeth without complication. On July 10, 2002, defendant extracted three more of plaintiff's wisdom teeth. After the second procedure, plaintiff was given a "post-operative instruction sheet" which included the telephone number of a 24-hour answering service for defendant or his partner, in the event of a problem.

Plaintiff's mother called the answering service early on July 11, 2002 because plaintiff was experiencing severe pain and swelling. Defendant called back shortly thereafter recommending Advil in addition to the Vicodin he had prescribed. On July 11 or 12, defendant left for a weekend vacation. Plaintiff's mother testified that she called the answering service eight times on July 13. When she did not hear from defendant, plaintiff's mother brought plaintiff to another dentist who was unable to examine plaintiff due to the swelling in her mouth. Plaintiff was referred to the emergency room at St. Luke's Roosevelt Hospital where she was given penicillin for an infection. Plaintiff suffered an allergic reaction to the penicillin and was admitted to the hospital for five days.

Plaintiff brought the dental malpractice action claiming that defendant departed from accepted standards and medical practices by abandoning the plaintiff, failing to treat plaintiff's infection, failing to prescribe antibiotics and failing to see plaintiff for a follow-up visit. Plaintiff also alleged lack of informed consent.* Defendant moved for summary judgment arguing that

---

* The motion court dismissed this cause of action and plaintiff did not cross-appeal, so plaintiff's claim that had she known defendant was going on vacation, she would not have had the extraction is barred on appeal.

plaintiff had failed to establish a prima facie case for medical malpractice. The court denied the motion, allowing the medical malpractice claim to proceed to trial. For the reasons set forth below, we reverse.

In order to establish medical malpractice, a plaintiff must demonstrate that defendant departed from accepted standards of medical practice and that this departure was the proximate cause of plaintiff's injuries (*Knutson v Sand*, 282 AD2d 42, 43 [2001]). The motion court found issues of fact as to whether defendant departed from the accepted standard of dental care in two ways. First, defendant failed to call plaintiff into his office on July 11, 2002 to examine her condition. Second, defendant failed to provide for alternative aftercare treatment while he was away for the weekend and may have thus "abandoned" plaintiff. The motion court further found that plaintiff's expert had raised triable issues of fact by testifying that the two purported departures combined were a substantial factor resulting in plaintiff's admission to the hospital and thus the proximate cause of her subsequent injuries.

The dissent finds merit in this assertion even though plaintiff's expert's opinion as to defendant's "departure" of not seeing plaintiff for a follow-up visit on July 11 is nothing more than a bald conclusory statement. Plaintiff's expert opined that defendant was obliged to see plaintiff in his office due to the nature of her symptoms and defendant's upcoming vacation.

Nowhere in the testimony does plaintiff's expert actually state that plaintiff's symptoms of pain and swelling were abnormal. Nor does plaintiff's expert mention "fever" as one of plaintiff's symptoms. Further, plaintiff's expert never controverts defendant's testimony that pain and swelling are normal after wisdom tooth extraction; nor does plaintiff's expert testify that defendant's failure to see plaintiff for these normal symptoms of pain and swelling is a departure from acceptable standards of medical practice. Thus, the record is devoid of any assertion that had defendant called plaintiff into his office on July 11, he would have found plaintiff's extractions infected or given her some form of treatment other than the Advil he recommended over the telephone.

As to defendant's second alleged departure, in order to establish a prima facie case of abandonment, there must be evidence of an affirmative "willful abandonment" or a refusal to treat the patient (*Meiselman v Crown Hgts. Hosp.*, 285 NY 389, 395 [1941]).

In the case at bar, plaintiff was not sent home from the defendant's office ill or in a state that required further medical

attention. Defendant had completed a wisdom tooth extraction without complication and had provided plaintiff with information regarding her condition in the postoperative sheet. Further, in that same sheet, plaintiff was given information on further treatment. The sheet detailed the covering arrangement between defendant and his partner. While defendant's covering arrangement was perhaps not as effective on July 13 as it was on July 11, in that it failed to put plaintiff in contact with defendant, both plaintiff's and defendant's expert witnesses opined that such a covering arrangement was standard practice in the medical field.

In any event, even had defendant seen plaintiff on July 13, it is uncontroverted that he would have found himself in the same position as the alternative doctor: unable to examine plaintiff because her mouth was swollen shut. There is nothing in the record that indicates that had defendant been available on July 13 he would not have referred her to a hospital where she likely would have been administered the same medications she was given at St. Luke's, and so would have experienced the same allergic reaction. Concur—Andrias, J.P., Sullivan, Williams and Catterson, JJ.

Gonzalez, J., dissents in a memorandum as follows: Because I believe that the conflicting expert testimony in this dental malpractice case raises triable issues of fact as to whether defendant departed from the prevailing standard of care and, if so, whether such departure was a proximate cause of plaintiff's injuries, I respectfully dissent and would affirm the denial of defendant's motion for summary judgment.

On July 10, 2002, plaintiff had three wisdom teeth extracted by defendant Miles, an oral surgeon. After the procedure, plaintiff was given a postoperative instruction sheet which described the recovery process, including the potential for pain and swelling of the mouth. The sheet also listed a 24-hour answering service that plaintiff could call if any complications developed. Plaintiff was also provided with a prescription for the pain medication Vicodin.

For the remainder of the day and into the next morning, the pain and swelling of plaintiff's face increased. As a result, her mother, Diane Alvarado, called the 24-hour answering service at 5:45 A.M. on July 11 and defendant returned the call shortly after. The mother described plaintiff's condition, including the pain, severe swelling and low-grade fever. Defendant responded that they should not be alarmed since pain and swelling were common aftereffects of oral surgery. Defendant instructed plaintiff to alternate taking Advil with the Vicodin, but did not

instruct her to come into the office for a visit. Defendant left for his vacation home in upstate New York on Friday evening July 12 or the next morning, July 13.

The parties disagree as to what happened next. Plaintiff testified that when her condition failed to improve on July 12, her mother called defendant's answering service on Sunday morning, July 13, and was told that defendant would contact her. However, defendant never returned that call or the additional eight calls made to his answering service at regular intervals that morning. According to plaintiff, the person from the answering service told her mother that defendant was not responding to the pages and they had no other way to contact him. Eventually, plaintiff's mother found another dentist in the Yellow Pages, who promptly referred plaintiff to the hospital after observing her condition. Plaintiff was ultimately diagnosed in the hospital with an infection and spent five days there after having an allergic reaction to the antibiotics given her.

Defendant, on the other hand, denies receiving any calls or pages from his answering service on July 13, but states in his affidavit that he did receive a call on that day from his partner, Dr. Gelfman, with whom he had a standing covering arrangement should he prove to be unavailable. According to defendant, Dr. Gelfman told him that plaintiff had been hospitalized and he then called and spoke to plaintiff directly over the telephone. Plaintiff disputes this, testifying that defendant did not call her until July 17, the day before she was discharged from the hospital.

Plaintiff commenced the instant action for dental malpractice and defendant moved for summary judgment. Defendant submitted an expert affidavit stating that neither the failure to see plaintiff on July 11 nor the failure to be personally available on July 13 were departures from accepted dental practices, nor was there any evidence that such alleged departures caused plaintiff's injuries. In contrast, plaintiff's expert averred that the failure to see plaintiff on July 11 and the failure to provide adequate coverage by another dentist were departures from accepted practice, and that the combination of these failures was a substantial factor in necessitating plaintiff's emergency hospital treatment.

Supreme Court properly denied defendant's motion for summary judgment. The two necessary elements of a dental malpractice action are: a deviation or departure from accepted practice and that such departure was a proximate cause of the complained-of injury (*Vona v Wank*, 302 AD2d 516 [2003]; *Knutson v Sand*, 282 AD2d 42, 43 [2001]). Here, the conflicting

expert affidavits raise issues of fact as to whether defendant departed from accepted practice by, inter alia, failing to examine plaintiff on the day after surgery when she called and complained about severe pain, swelling and a fever, especially given his imminent vacation in two days, and by failing to provide adequate covering arrangements while on vacation (*see Calabro v Hescheles*, 22 AD3d 622, 622-623 [2005]; *Prigorac v Park*, 20 AD3d 363 [2005]; *Lewis v Capalbo*, 280 AD2d 257, 258-260 [2001]).

The conflicting affidavits likewise raise a triable issue as to whether the aforementioned departures were a proximate cause of plaintiff's emergency hospital treatment. In order to prove causation in a malpractice action, a plaintiff need only offer sufficient evidence from which a reasonable person may conclude that it is more probable than not that the injury was caused by the defendant (*Pasquale v Miller*, 194 AD2d 597, 598 [1993]; *Vona v Wank*, 302 AD2d at 516). The evidence need not eliminate every other possible cause (*Pasquale* at 598).

In his affidavit, plaintiff's expert specifically states that the combination of defendant's failure to see plaintiff on the 11th and to provide a covering oral surgeon "were substantial factors in necessitating that plaintiff seek treatment on an emergency basis on July 13." The expert goes on to say that all of plaintiff's emergency treatment—including the morphine, intravenous antibiotics, incision and drainage surgery and allergic reaction to medication—"could have been avoided had she been seen by defendant Miles in his offices." In light of this expert medical evidence, as well as the compelling inference that had defendant examined plaintiff on July 11 the resulting infection would have been discovered and remedied much sooner, clear triable issues of proximate cause have been raised (*Barresi v Chou*, 293 AD2d 637, 638-639 [2002]; *Lewis v Capalbo*, 280 AD2d at 259-260). It would hardly be speculative for a jury to conclude that defendant's failure to examine plaintiff or to provide adequate postoperative coverage were substantial factors in causing her infection and emergency hospitalization.