Flores v New York City Health & Hosps. Corp.

2026 NY Slip Op 02876

May 7, 2026

Appellate Division, First Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This decision is uncorrected and subject to revision before publication in the Official Reports.

Luis Flores etc., Plaintiff-Respondent-Appellant,

v

New York City Health And Hospitals Corporation, Defendant-Appellant-Respondent, New York City et al., Defendants.

Decided and Entered: May 07, 2026

Index No. 27869/18|Appeal No. 5726|Case No. 2024-04338|

Before: Webber, J.P., Kennedy, Mendez, Rodriguez, Michael, JJ.

Mauro Lilling Naparty LLP, Woodbury (Katherine Herr Solomon of counsel), for appellant-respondent.

Diamond and Diamond LLC, Brooklyn (Stuart Diamond of counsel), for respondent-appellant.

[*1]

Order, Supreme Court, Bronx County (Paul L. Alpert, J.), entered on or about July 10, 2024, which denied so much of defendant's posttrial motion as sought to set aside the jury verdict as against the weight of the evidence and granted so much of the motion as sought to set aside the jury's damage award, ordering a new trial on damages unless plaintiff stipulated to a reduction of the award for past pain and suffering from $6.1 million to $4 million, unanimously modified, on the law and the facts, the motion denied to the extent it sought to set aside the jury's award, and the award reinstated, and otherwise affirmed, without costs. The Clerk is directed to enter judgment accordingly.

Plaintiff's contention that defendant's appeal should be dismissed is unavailing. Although defendant failed to include on its motion below the testimony of the decedent Juan Flores's (Mr. Flores) family members regarding his pain and suffering, plaintiff did not object to the motion on that ground, so the issue is unpreserved. In any event, the testimony is in the record before us. Further, the testimony is irrelevant to the issue of liability, and the motion court alluded to the testimony in discussing Mr. Flores's pain and suffering.

The jury's finding that defendant failed to timely diagnose Mr. Flores with an atrial-esophageal fistula following a cardiac ablation was supported by sufficient evidence and was not against the weight of the evidence (see Rose v Conte, 107 AD3d 481, 483-484 [1st Dept 2013]; Villanueva v Ragins, 50 AD3d 285, 286 [1st Dept 2008]). Most significantly, plaintiff's expert testified that CT scans showed air outside of Mr. Flores's esophagus, which should have prompted defendant to perform further scans with contrast. Upon his admission for chest pain, Mr. Flores's medical records show that the plan was to conduct those scans a week after the ablation. Although scans were taken, they were inexplicably taken without contrast. While defendant's expert and its doctors who treated Mr. Flores testified that the fistula did not develop until approximately a week later and that the treatment for pericarditis prior to that time was appropriate, the jury was free to credit plaintiff's experts over defendant's (see Brown v Speaker, 66 AD3d 422, 423 [1st Dept 2009]). Because the jury concluded that Mr. Flores's injuries were caused by defendant's failure to timely diagnose the fistula, we need not reach the issue of whether defendant committed malpractice by permitting Mr. Flores to fall off the operating table while his leg was being amputated.

[*2]

Despite defendant's contention that this award deviates materially from what would be reasonable compensation, the facts of this case demonstrate that the $6.1 million award was appropriate under the circumstances (see Villanueva, 50 AD3d at 286). During his two-month hospitalization, Mr. Flores underwent more than 35 surgical procedures. He endured multiple cardiac events, several bronchoscopies, and infarcts in his brain. His body was covered with catheters, tubes, wound vacuums, and wound packing. Mr. Flores's family testified to hearing his grunts of discomfort and screams of pain, and observing the beating of his heart and movement of his lungs through open wounds.

Mr. Flores's children witnessed his body "rotting with time." The medical examiner's report corroborated this account: Mr. Flores had a necrotic and jaundiced tongue; a gaping nine-inch incision on his chest; a purulent seven-inch incision exposing his ribs; multiple open and oozing incisions across his abdomen; a two-inch hole in his groin; a four-inch incision on his thigh; and an above-the-knee amputation that never healed. A video taken shortly before his death established that Mr. Flores was conscious and aware throughout his hospitalization.

In light of these facts, the jury's original award of $6.1 million for pain and suffering should not be disturbed, as it was not against the weight of the evidence and did not deviate materially from what would be reasonable compensation.

THIS CONSTITUTES THE DECISION AND ORDER OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.

ENTERED: May 7, 2026